## Kentucky & West Virginia Power Co., Inc., v. Anderson.

Dec. 2, 1941.

502

Harman, Francis & Hobson for appellant.

Jean L. Auxier and Kenneth A. Howe for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Affirming.

Noise is the subject matter of this opinion. The judgment is for $500 for damages to property by the operation of an electric sub-station consisting of a series of large transformers adjoining the home of the appellee, James P. Anderson. He acquired his property, a five-room frame dwelling, at the edge of Pikeville in 1927. The appellant acquired the adjoining lot and erected these transformers in the latter part of 1936,

about seven feet from appellee's fence and fifteen feet from his house. High voltage electricity is brought to the station and reduced there to a current suitable for distribution in the city. There are four transformers but only three are used at a time. Each consists in part of an iron core surrounded by a series of coils. The current is reduced by induction. The core is magnetized and demagnetized 120 times a second and this causes vibration or pulsation which produces a constant humming or buzzing. The witnesses differ as to the distance at which the noise can be heard and its effect upon them. Some say it cannot be heard sixty feet away, and others one hundred feet. But it was not denied that it is quite audible anywhere on plaintiff's property. Persons in the house are annoyed and disturbed in their conversations and sleep and, as well, in the effect such a constant vibrating noise or humming has on their nerves. It or the presence of the electricity practically destroyed the use of the radio in the home. Defendant's witnesses minimize the sound and its effect, and an expert made a test with a device called a sonometer. Sound is measured by a decible just as weight is by a pound. This instrument showed the volume to be fifty-three decibles next to the transformers and the average of three readings along plaintiff's fence was forty-four. At a point 150 feet up the street, where the witness stated the sound of the transformers could not be heard at all, the reading was forty-three. He testified as to the readings in a number of other places. On the train it was ninety; in his hotel room in Pikeville fifty-two; and in the court room fifty-six. There is evidence also that frequently during electric storms terrifying blue blazes and balls of fire flashed and loud popping sounds came from the station. But the court confined the jury to the question of diminution in the market value of plaintiff's property only by reason of the noise.

The appellant contends that no cause of action exists for mere noise which is not unreasonable or excessive in degree, or loud, discordant or jarring, and not such as to produce actual physical discomfort to ordinary, average people. Also that the instructions were erroneous in failing to require the jury to find that the hum of the transformers created a noise excessive or unreasonable in degree. The instructions predicated the

right of recovery of damages upon the belief by the jury from the evidence that "the noises constantly and continuously emanating from the transformers" were of "such character and degree as to produce actual physical discomfort and annoyance to a person of ordinary health and of normal or average sensibilities, occupying the home of the plaintiff on his property adjoining the property of the defendant."

There can be no doubt but that commercial and industrial activities which are lawful in themselves may become nuisances if they are so offensive to the senses that they render the enjoyment of life and property uncomfortable. It is no defense that skill and care have been exercised and the most improved methods and appliances employed to prevent such result. Wheat Culvert Company v. Jenkins, 246 Ky. 319, 55 S. W. (2d) 4; 46 C. J. 683, 705; 20 R. C. L. 438; Annotations, 23 A. L. R. 1407; 90 A. L. R. 1207. Of course, the creation of trifling annoyance and inconvenience does not constitute an actionable nuisance, and the locality and surroundings are of importance. The fact that the cause of the complaint must be substantial has often led to expressions in the opinions that to be a nuisance the noise must be deafening or loud or excessive and unreasonable. Usually it was shown to be of that character. The determining factor when noise alone is the cause of complaint is not its intensity or volume. It is that the noise is of such character as to produce actual physical discomfort and annoyance to a person of ordinary sensibilities, rendering adjacent property less comfortable and valuable. If the noise does that it can well be said to be substantial and unreasonable in degree; and reasonableness is a question of fact dependent upon all the circumstances and conditions. 20 R. C. L. 445, 453; Wheat Culvert Company v. Jenkins, supra. There can be no fixed standard as to what kind of noise constitutes a nuisance. It is true some witnesses in this case say they have not been annoyed by the humming of these transformers, but that fact is not conclusive as to the non-existence of the cause of complaint, the test being the effect which is had upon an ordinary person who is neither sensitive nor immune to the annoyance concerning which the complaint is made. In the absence of evidence that the complainant and his family are supersensitive to distracting noises, it is to be assumed that they

are persons of ordinary and normal sensibilities. Roukovina v. Island Farm Creamery Company, 160 Minn. 335, 200 N. W. 350, 38 A. L. R. 1502.

In most of our cases involving noise as a nuisance it was accompanied by other elements; for example, a circus (Dulaney v. Fitzgerald, 227 Ky. 566, 13 S. W. (2d) 767, 63 A. L. R. 404); a gasoline filling station operated without care (Indian Refining Company v. Berry, 226 Ky. 123, 10 S. W. (2d) 630); a blacksmith shop operating at night (Peacock v. Spitzelberger, Ky., 29 S. W. 877, 16 L. R. A. 803); a rock quarry (Barrett v. Vreeland, 168 Ky. 471, 182 S. W. 605). A number of business activities held not to be nuisances per se are listed in Standard Oil Company v. Bentley, 260 Ky. 185, 84 S. W. (2d) 20, which is also a gasoline filling station case. We also have a case where plaintiff's home was close to an electric power house and she complained of noise, smoke, ashes and vibration. We approved the omission from the instructions of the element of noise because it was proven to be only the usual and ordinary sound incident to a careful operation of such plants. Hughes v. General Electric Light & Power Company, 107 Ky. 485, 54 S. W. 723. But the case is distinguishable in that the cause of action was based upon negligent and careless operation. In the more recent case of Kentucky-Ohio Gas Company v. Bowling, 264 Ky. 470, 95 S. W. (2d) 1, we held that a nearby property owner could recover damages resulting from the operation of a gas pumping station which continuously created noises and caused air vibrations and concussions which shook plaintiff's house even though there was no negligence.

In Wheat Culvert Company v. Jenkins, supra, we held an injunction was properly decreed to stop the noise from the operation of a metal culvert factory at night which interfered with the sleep of the occupants of an adjacent residence. It is true the clanging, riveting and hammering of metal plates produces a sound different in character from the steady hum or buzz of the electric machinery described in this case. In the Jenkins case the noise was loud, discordant and intermittent. Here it is interminable and monotonous. Therein lies the physical annoyance and disturbance. Though the noise be harmonious and slight and trivial in itself, the constant and monotonous sound of a cricket on the hearth, or the drip of a leaking faucet is irritating, un-

comfortable, distracting and disturbing to the average man and woman. So it is that the intolerable, steady monotony of this ceaseless sound, loud enough to interfere with ordinary conversation in the dwelling, produces a result generally deemed sufficient to constitute the cause of it an actionable nuisance. Thus, it has been held the continuous and monotonous playing of a phonograph for advertising purposes on the street even though there were various records, singing, speaking and instrumental, injuriously affected plaintiff's employees by a gradual wear on their nervous systems, and otherwise, is a nuisance authorizing an injunction and damages. Frank F. Stodder et al. v. Rosen Talking Machine Company, 241 Mass. 245, 135 N. E. 251, 22 A. L. R. 1197.

Cases may be found where the facts were more or less analogous to those in this record in which it was held there was no cause of action for damages or basis for injunctive relief. There are at least two cases where the situation was identical with that presented here.

In Miranda v. Buffalo General Electric Company, 140 Misc. 267, 251 N. Y. S. 510, 512, an injunction and damages were sought by adjoining property owners because of the partial erection and contemplated operation of an electric transforming sub-station in a section of the city of Buffalo where such structures were permitted by the zoning authorities. The court held that if the particular structure should be like others already operating in the city and produce a humming sound like them there would be "a tangible definite invasion of plaintiffs' private rights" and a substantial interference with the peace and quiet of their homes; hence it would become a nuisance. However, as the defendant planned to install certain instrumentalities that would control and eliminate the objectionable sound, the court, accepting the judgment and ability of the defendant to carry out its apparently honest intention to save the plaintiffs from the noise of its transformers, denied the injunction, but provided that in the event of its failure to do as promised the plaintiffs could apply again for relief and indicated that it would be granted.

In Alabama Power Company v. Stringfellow, 228 Ala. 422, 153 So. 629, plaintiff sued for damages for the depreciation in value of his residence by the erection and operation of a similar sub-station in close proximity

to it. The defendant claimed the structure and its operation were lawful and not negligent; hence it was damnum absque injuria and was not a nuisance. The court pointed out that it would not be a private nuisance under the English rule or a public nuisance under the American doctrine, but that it was a private nuisance under our doctrine. It was held that the trial court had properly ruled out by his charge to the jury the claim of unsightliness of the structure and that the evidence failed to prove a material interference with plaintiff's radio because it was out of order. But it was also held that a cause of action based alone upon the noise of the transformers was proven. The verdict was regarded as excessive and the case affirmed, conditioned on the filing by the plaintiff of a remittitur of all damages in excess of $600.

The instruction in this case was more favorable to the defendant than the evidence warranted in that it omitted elements of a nuisance other than the noise. The jury visited the place and had the benefit of hearing the noise itself as well as its description by the witnesses. It is not to be assumed that in returning the verdict the jury ignored the prescribed condition of the instruction as to the character and degree of the noise and its effect. The jury was not liberal in its award.

Therefore, upon reasoning and authority we affirm the judgment.

Judgment affirmed.